# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| ABC IP, LLC, a Delaware limited liability company, | ) ) ) | CASE NO. XX |
| and | ) ) | |
| RARE BREED TRIGGERS, INC., a Texas corporation, | ) ) ) | **COMPLAINT FOR PATENT INFRINGEMENT** |
| Plaintiffs. | ) ) ) | |
| v.- | ) ) ) | **JURY TRIAL DEMANDED** |
| TX Defense Supply LLC, a Texas Limited Liability Company, | ) ) ) ) | |
| and | ) ) | |
| Leon L. Clark, an individual, | ) ) | |
| Defendants. | ) | |

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse TX Defense Supply LLC ("TXDS") and Leon L. Clark ("Clark") (collectively, "Defendants"), of infringing U.S. Patent Nos. 12,038,247; 12,031,784; 12,529,538; 12,578,159; and 12,636,403 as follows:

## PARTIES

1.    ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The green, Suite A, Dover, Delaware 19901.

2.    Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

1

3. Upon information and belief, TX Defense Supply LLC ("TXDS") is a limited liability company organized under the laws of Texas with an address of 220 Mauldin St, Georgetown, Texas 78628.

4. Upon information and belief, Leon L. Clark ("Clark") is an individual residing at 220 Mauldin St, Georgetown, Texas 78628.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85.

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7. Personal jurisdiction over Defendants is proper in this District because the Defendants reside in and have a regular and established place of business in this District.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in or have committed acts of infringement and have a regular and established place of business in this District.

## BACKGROUND

9. This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,529,538 ("the '538 Patent"), 12,578,159 ("the '159 Patent"), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents").

2

10.     The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

11.     The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

12.     The '538 Patent was lawfully and properly issued by the United States Patent and Trademark Office on January 20, 2026. Each and every claim of the '538 Patent is valid and enforceable. A true and correct copy of the '538 Patent is attached as Exhibit C.

13.     The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit D.

14.     The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit E.

15.     ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

16.     Rare Breed is the exclusive licensee of the Asserted Patents.

17.     Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

18.    Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

**THE INVENTIONS**

19.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

20.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull

4

of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

21.     In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

22.     The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

23.     The '784 Patent provides a device that works in a forced reset trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a "deflectable extension of the locking member that is actuated by forward movement of the bolt carrier," among other innovations as explicitly claimed. Certain inventions of the '784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

24.     The '538 Patent provides a safety mechanism for a firearm that employs a cam selector, a lever, and a trigger. The cam selector contains multiple recesses and is configured to operate between a first mode, a second mode, and a third mode. In the first mode, a portion of the

trigger referred to as a first trigger tail portion is movable within the first recess. In the second mode, the first trigger tail portion is allowed to engage the second recess and be moved down by a cam portion of the second recess when the cam selector rotates. In the third mode, the cam selector is configured to prevent the trigger from being pulled.

25.    The '403 Patent describes and claims a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) forced reset semiautomatic mode.

26.    The claims of the patents define the scope of the patented inventions.

**THE INFRINGING DEVICES**

27.    On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including the following (collectively, the "Infringing Devices"):

**I.    The Super Safety**

28.    On information and belief, Defendants are currently making, using, selling, and/or offering for sale a (3-Position) Super Safety ("the Super Safety"), which embodies the technology claimed in at least the '247, '784, '538, '159, and '403 Patents.

29.    On information and belief, Defendants are making, using, selling, and/or offering for sale the Super Safety via the website www.txdefensesupply.com, in multiple variants:

  a.    A partial kit, which includes at minimum the cam and/or cam lever components, and may further include one or more additional components—when these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247, '784, '538, '159, and '403 Patents—and/or;

6

     b.  <u>A complete kit</u>, which includes at minimum the cam and cam lever components and additional components (e.g., a standard AR-pattern hammer, disconnector, standard springs, and a modified trigger).

30.    Exemplary photographs are shown below:



TX Defense Supply

31.

The Super Safety can operate in a "disconnector mode," which is much like that of a standard AR-

trigger. The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

32.

### COUNT I – INFRINGEMENT OF THE '247 PATENT

33.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

34.     In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Super Safety.

35.     On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

36.     An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | <br><br>**The Super Safety**<br><br>*See also*, Ex. J, Super Safety 3D Printed Active Trigger System v4.4, ("Super Safety Guide") at 12 |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear catch and a hook for engaging a disconnector (orange).<br><br><br><br>(Plaintiff-generated renderings of the Super Safety here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br><br><br>**(Hammer Set Position Above)**<br><br><br><br>**(Hammer Released Position Above)** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (brown) has a sear. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (brown) and sear catch of the hammer (red) are in engagement when the hammer and trigger member are in their set positions.<br><br><br><br>**Trigger Member Set Position Above** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (brown) and sear catch of the hammer (red) are out of engagement in the released position. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| |  **Trigger Member Released Position Above** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red).   **Disconnector Hook Engaged Above** |
| and a cam having a cam lobe and adapted to be movably mounted in the | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket) |

13

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| fire control mechanism pocket, | <br><br>**Super Safety Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position Above**<br><br>In the second position, the cam lobe forces the trigger member (brown) toward the set position when the cam is in the forced reset semi-automatic mode. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | **Cam and Lobe Second Position Above** |
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, |
| said cam is in said first position, | . . . the cam is in the first position. |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| hook catches said hammer hook, | |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br> |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger | . . . at which time a user must manually release the trigger member (brown) to free said hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

16

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| member to fire the firearm, and | |
| whereupon in a forced reset semi-automatic mode, | When in the forced reset semi-automatic mode, |
| said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | . . . the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook is prevented from catching the hammer hook. |

17

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| | |
| and thereafter the bolt carrier moves forward into battery, | Thereafter, the bolt carrier moves forward into battery,<br> |
| at which time the user can pull said trigger member to fire the firearm. | . . . at which time the user can pull the trigger member (brown) to fire the firearm. |

| '247 Patent Claim 15 | The Super Safety |
|---|---|
| |  |

37.    On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '247 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety. .

38.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 15 of the '247 Patent.

39.    On information and belief, Defendants also contribute to the infringement of the '247 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety, such as the cam or cam lever arm. The

components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '247 Patent.

40.    Defendants have engaged in egregious infringement behavior with knowledge of the '247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '247 Patent and that the '247 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '247 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '247 Patent.

41.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '247 Patent pursuant to 35 U.S.C. § 271.

42.    By their actions, Defendants' infringement of the '247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

43.    By their actions, Defendants' infringement of the '247 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

44.    Defendants' infringement of the '247 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

45.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

20

46.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – INFRINGEMENT OF THE '784 PATENT

47.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

48.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Super Safety.

49.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

50.    An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '784 Patent is illustrated in the chart below:

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| | **Super Safety** *See also,* Ex. J, Super Safety Guide at 12 |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
|  | **Super Safety Installed** (Plaintiff-generated renderings of Super Safety here and below; Locking member and bolt carrier shown here and below in section view for clarity) "The Super Safety is a mechanism that actively resets the trigger of a firearm to allow the operator to fire again, quickly, and efficiently. The Super Safety has been designed to operate with AR-15 pattern firearms that use a mil-spec bolt carrier and fire control group." Ex. J, Super Safety Guide at 1. |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Super Safety operates as a locking member and has a first position in which the Super Safety locks the trigger member against pulling movement. |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| | **Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The Super Safety is moveable from the first position to a second position where it does not restrict movement of the trigger member.<br><br>**Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The Super Safety is movably (pivotally about the axis depicted below) supported by a frame (the lower receiver). |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| | |
| and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier, | The Super Safety has an upward extending portion (lever arm) configured to make actuating contact with a surface of the bolt carrier. |
| such actuating contact causing the locking member to move from the first position to the second position, | The actuating contact causes the locking member to move from the first position to the second position. |

| '784 Patent Claim 1 | The Super Safety |
|---|---|
| | <br>**Unlocked Second Position** |

51.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '784 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety while selling products.

52.     On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '784 Patent.

53.     On information and belief, Defendants also contribute to the infringement of the '784 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and

adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '784 Patent.

54.    Defendants have engaged in egregious infringement behavior with knowledge of the '784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '784 Patent and that the '784 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '784 Patent.

55.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '784 Patent pursuant to 35 U.S.C. § 271.

56.    By their actions, Defendants' infringement of the '784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

57.    By their actions, Defendants' infringement of the '784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

58.    Defendants' infringement of the '784 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

59.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

60.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT III — INFRINGEMENT OF THE '538 PATENT

61.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

62.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '538 patent. Such unlicensed products include the Super Safety.

63.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '538 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

64.    An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '538 Patent is illustrated in the chart below:

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| 1. A safety mechanism for a firearm comprising: | The Super Safety is part of a forced reset trigger mechanism installed into a firearm receiver in place of a standard safety. **Super Safety** Ex. J, Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12. **Super Safety Installed** (Plaintiff-generated renderings of Super Safety here and below; cam selector and bolt carrier shown in section view for clarity) |

29

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| a cam selector; | The Super Safety includes a dual mode cam selector that allows for selection of safe, active reset, and passive reset modes. **Dual Mode Cam Selector** Ex. J, Super Safety Guide at 1 Cam selector |
| a lever; | The Super Safety has a lever (pink) extending upward from the cam selector. Lever |

30

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| a trigger; | The cam selector operates on a trigger. (brown) |
| the cam selector comprising a first end, a second end, a top side, and a bottom side; | The Super Safety dual mode cam selector has two ends, a top side, and a bottom side as illustrated below. |
| the cam selector comprising a longitudinal slot positioned on the top side of the cam selector; | The Super Safety dual mode cam selector comprises a longitudinal slot that is positioned on the top side and extends along the cam selector. |

31

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the lever comprising a proximal end and a distal end; | The Super Safety lever (pink) has a proximal end and a distal end, as illustrated below.<br><br> |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the longitudinal slot being configured to receive the proximal end of the lever; | The longitudinal slot on the top side of the cam selector (yellow) is configured to receive the proximal end of the lever (pink).  Ex. J, Super Safety Guide at 12 |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the cam selector further comprising a first recess and a second recess on the bottom side of the cam selector; | The Super Safety dual mode cam selector has a first recess and a second recess on the bottom side of the cam. |

34

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| the trigger comprising a first trigger tail portion; | The Super Safety dual mode trigger has a first trigger tail portion, shown in the red box below.<br><br><br><br>Ex. J, Super Safety Guide at 10.<br><br> |
| the cam selector being configured to operate between a first mode, a second mode, and a third mode; | The Super Safety dual mode cam is operable in three modes: (1) passive reset (standard semi-automatic) (2) active reset, and (3) safe. Super Safety Guide at 1. |
| wherein the first mode of the cam selector is configured to allow the first trigger tail portion to be movable within the first recess, | The Super Safety dual mode cam selector is operable in standard semi-automatic mode, in which the first trigger tail aligns with the first recess of the cam. |

35

| '538 Patent Claim 1 | The Super Safety |
|---|---|
|  | <br><br>(**Standard Semi-Automatic Mode**)<br><br>When the cam selector is in the first mode, the first trigger tail portion is movable within the first recess of the cam.<br><br>(**Super Safety Installed**) |

36

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| | **(Super Safety Installed, Trigger Pulled, Lever and Cam**<br><br>**Rotated)** |
| wherein the second mode of the cam selector is configured to allow the first trigger tail portion to engage the second recess | The Super Safety dual mode cam selector is operable in active reset mode, in which the first trigger tail aligns with the second recess of the cam.<br><br>(Active Reset Mode) |
| and be moved down by a cam portion of the second recess when the cam selector rotates, | In the second mode, when the cam is rotated by the lever, the cam selector portion of the second recess moves the first trigger tail portion down. |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |  (Super Safety Installed, Trigger Pulled) (Super Safety Installed, Lever and Cam Rotated) |

| '538 Patent Claim 1 | The Super Safety |
|---|---|
| |  |
| and wherein the third mode of the cam selector is configured to prevent the trigger from being pulled. | The Super Safety dual mode cam is operable in safe mode, in which the first trigger tail portion does not align with a recess in the cam. The trigger is not movable within a recess of the cam, and the cam therefore prevents the trigger from being pulled. |

65.    On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '538 patent.

Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety while selling products. .

66.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '538 Patent.

67.    On information and belief, Defendants also contribute to the infringement of the '538 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '538 Patent.

68.    Defendants have engaged in egregious infringement behavior with knowledge of the '538 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '538 Patent and that the '538 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '538 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '538 Patent.

69.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '538 Patent pursuant to 35 U.S.C. § 271.

70.     By their actions, Defendants' infringement of the '538 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

71.     By their actions, Defendants' infringement of the '538 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

72.     Defendants' infringement of the '538 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

73.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

74.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT IV — INFRINGEMENT OF THE '159 PATENT

75.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

76.     In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

41

products in a manner that infringes the '159 patent. Such unlicensed products include the Super Safety.

77.     On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

78.     An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 1 of the '159 Patent is illustrated in the chart below:

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism that uses a bolt means. With the Super Safety installed, the trigger mechanism operates in a standard semi-automatic mode and a forced reset semi-automatic mode **Super Safety**<br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | <br><br>**Super Safety (Installed)**<br><br>(Plaintiff-generated renderings of the<br>Super Safety here and below) |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Super Safety (yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (red) that has a sear surface and a hook for engaging a disconnector (orange).<br><br><br><br>**Super Safety (Installed)** |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means, | The hammer (red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means. |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | **Hammer Set Position** **Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Super Safety (yellow) is installed with a trigger member (brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| between set and<br><br>released positions, | <br>**Trigger Member Set Position**<br><br><br>**Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member (brown) and sear surface of the hammer (red) are in engagement when the hammer and trigger member are in their set positions. |

45

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | <br>**Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member (brown) and sear catch surface of the hammer (red) are out of engagement in the released position.<br><br>**Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a | The disconnector (orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (red). |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| transverse disconnector pivot axis, and | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Super Safety has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* image above depicting Super Safety, shown in yellow, in fire control mechanism pocket)<br><br><br><br><br><br><br><br><br><br><br><br>**Super Safety Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the | The cam is movable between a first position and a second position. |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| trigger member toward the set position, | <br><br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe forces the trigger member (brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br><br><br>**Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode, |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) such that the disconnector (orange) hook catches the hammer hook.<br><br><br><br>**Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery, |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | **Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger | at which time a user must manually reduce pressure on the trigger member (brown) to free the hammer (red) from the disconnector (orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

50

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| member to fire the firearm, and | **Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second (forced reset semi-automatic) mode, |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | Rearward movement of the bolt means causes rearward pivoting of the hammer (red) and the cam to force the trigger member toward the reset position such that the disconnector (orange) hook is prevented from holding the hammer hook. |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| | |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position,<br><br> |
| at which time the user can pull the trigger member to fire the firearm. | at which time the user can pull the trigger member (brown) to fire the firearm without having to first release pressure on the trigger member. |

| '159 Patent Claim 1 | The Super Safety |
|---|---|
| |  |

79.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '159 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Super Safety while selling products. .

80.     On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '159 Patent.

81.     On information and belief, Defendants also contribute to the infringement of the '159 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and

adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '159 Patent.

82.     Defendants have engaged in egregious infringement behavior with knowledge of the '159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '159 Patent and that the '159 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '159 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '159 Patent.

83.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '159 Patent pursuant to 35 U.S.C. § 271.

84.     By their actions, Defendants' infringement of the '159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

85.     By their actions, Defendants' infringement of the '159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

86.     Defendants' infringement of the '159 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

87.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

88.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT V — INFRINGEMENT OF THE '403 PATENT

89.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

90.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Super Safety.

91.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

92.    An exemplary comparison of the Super Safety, when assembled and used as intended, with claim 38 of the '403 patent is illustrated in the chart below:

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Super Safety is part of a forced reset trigger mechanism. |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| | <br>**Super Safety**<br><br>Super Safety 3D Printed Active Trigger System v4.4, Hoffman Tactical (July 19, 2023) ("Super Safety Guide") at 12 |
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Super Safety (yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and pivots on a transverse axis.<br><br><br>**Super Safety (Installed)**<br><br>(Plaintiff-generated renderings of Super Safety here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;<br><br>a trigger member; and | The Super Safety is installed along with a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis, and a trigger member (brown) |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| |  |
| a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, | The Super Safety is a safety selector adapted to be movable between a standard semi-automatic position, |

**Disconnector and Trigger Member**

**Super Safety (installed) in Standard Semi-Automatic Position**

. . . and a forced reset semi-automatic position,

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| | **Super Safety (installed) in Forced Reset Semi-Automatic Position** |
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated. |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange), **Hammer Hook is Past Disconnector Hook** |
| rearward pressure on the trigger member must be reduced to permit the | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm. |

| '403 Patent Claim 38 | The Super Safety |
|---|---|
| trigger member to then be actuated to fire a firearm. |  **Pressure Must be reduced** |

93.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '403 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

94.     On information and belief, Defendants also contribute to the infringement of the '403 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Super Safety, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to forcibly reset a trigger mechanism and infringe the '403 Patent.

95.    Defendants have engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that its actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that its actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '403 Patent.

96.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

97.    By their actions, Defendants' infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

98.    By their actions, Defendants' infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

99.    Defendants' infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

100.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

101.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction,

damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgement against Defendants as follows:

a.      Each of the Asserted Patents has been and continues to be infringed by Defendants;

b.      Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c.      Each of the Asserted Patents is enforceable and not invalid;

d.      A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case, or other such equitable relief as the Court determines is warranted;

e.      A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents, or other such equitable relief as the Court determines is warranted;

f.      An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g.      An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h.      A finding that this action is an exceptional case under 35 U.S.C. § 285 and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

i.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED: May 27, 2026                    Respectfully submitted,

                                       /s/ Decker A. Cammack
                                       Decker A. Cammack
                                       **WHITAKER CHALK SWINDLE &**
                                       **SCHWARTZ PLLC**
                                       301 Commerce Street, Suite 3500
                                       Fort Worth, TX 76102
                                       Telephone:  (817) 878-0500
                                       Facsimile:  (817) 878-0501
                                       DCammack@whitakerchalk.com

                                       Glenn D. Bellamy
                                       **WOOD HERRON & EVANS LLP**
                                       600 Vine Street, Suite 2800
                                       Cincinnati OH 45202
                                       E-mail: gbellamy@whe-law.com
                                       Tel: (513) 707-0243
                                       Fax: (513) 241-6234

                                       Matthew A. Colvin (Pro Hac Vice)
                                       Texas Bar No. 24087331
                                       Carl E. Bruce (Pro Hac Vice)
                                       Texas Bar No. 24036278
                                       **FISH & RICHARDSON P.C.**
                                       1717 Main Street, Suite 5000
                                       Dallas, TX 75201
                                       E-mail: colvin@fr.com
                                        bruce@fr.com
                                       Tel: (214) 747-5070
                                       Fax: (214) 747-2091

                                       Benjamin J. Christoff (Pro Hac Vice)
                                       DC Bar No. 1025635
                                       **FISH & RICHARDSON P.C.**
                                       1001 Maine Avenue SW, Suite 1000
                                       Washington, DC 20024
                                       E-mail: christoff@fr.com
                                       Tel: (202) 783-5070
                                       Fax: (202) 783-2331

                                       *Attorneys for Plaintiffs*
                                       *ABC IP, LLC, and Rare Breed Triggers, Inc.*